No. 38,491

Tom Perkins, Leo Wolf, Chester Johnson, Josephine Johnson, Gareld Kline, Opal Kline, Kanie Turner, Harold L. Johnson, Chester Woodside, Lois Woodside, Darlene Nelson, Delane Olson, Chris Nelson, Florence Wright, Corrine Best, Riley Best, Belle Olson, P. S. Wright, James Perkins, Darryl Perkins, Maud Perkins, Veva M. Quint, County Superintendent of Graham County, Kansas, *Appellees*, v. Lenora Rural High School Joint District No. 1, Norton and Graham Counties, Kansas, C. H. Bills, Director, Marvin Jamison, Clerk and Fred Dieterich, Treasurer, Iris R. Olson, County Superintendent of Norton County, Kansas, *Appellants*.

(237 P. 2d 228)

Opinion filed November 10, 1951.

E. H. *Hatcher*, of Topeka, argued the cause, and J. C. *Tillotson*, of Norton, and *Harold E. Jones*, of Topeka, were with him on the briefs for the appellants.

*Marion W. Chipman*, of Hill City, argued the cause, and W. H. *Clark* and

*Kenneth Clark,* of Hoxie, and *Jerry E. Driscoll,* of Russell, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: This was an action instituted under the declaratory judgment statute to obtain a judicial interpretation of ch. 375, L. 1949 (G. S. 1949, 72-3514) and to determine whether proper procedure was followed by defendants in attaching territory in Graham County to Lenora Rural High School Joint District No. 1. Judgment was rendered in favor of plaintiffs and defendants appeal.

Plaintiffs, excepting Veva M. Quint, county superintendent of Graham County, are owners of land included in the area in question, but that portion of their land on which they reside was not included in the application for attachment of territory. Defendants, except Iris R. Olson, county superintendent of Norton County, are the duly elected, qualified and acting members and officers of Lenora Rural High School Joint District No. 1. For convenience, appellees will be referred to as plaintiffs and appellants as defendants.

The cause was tried to the court below on the pleadings and stipulations of the parties and the trial court made findings of fact and conclusions of law. Pertinent ones may be briefly summarized as follows: Lenora Rural High School Joint District No. 1 is a joint district consisting of territory located in Norton and Graham counties. All the buildings of the high school joint district are located in the city of Lenora in Norton County. Lying in Graham County and adjacent to Lenora Rural High School Joint District No. 1 is an area of land not within the boundaries of any rural high school district. A majority of the electors in a part of this adjacent territory located in Graham County circulated and submitted three applications to the Lenora Rural High School Joint District No. 1 to be attached thereto. The board of education of said joint district, having had submitted to them the applications for attachment together with the enumeration of electors within the territory covered by each application showing that a majority of the electors therein had petitioned to be attached to Lenora Rural High School Joint District No. 1, passed resolutions approving the attachment of the territory to said joint district. The board of said joint district then submitted its findings to the county superintendent of Norton County, which findings were by the county superintendent of Norton County approved and her consent given to attach said

land to Lenora Rural High School Joint District No. 1. An appeal was taken from the decisions of the board of education of Lenora Rural High School Joint District No. 1 and the county superintendent of Norton County to the State Superintendent of Public Instruction who, after a full hearing on the appeal, affirmed the attachment proceedings and requested the county superintendents of the two counties involved to make the necessary records to complete the attachment. Subsequent thereto the county superintendent of Norton County made demand upon the county superintendent of Graham County to certify the district boundary changes to the county clerk of Graham County in order that the attached territory be subjected to future tax levies of the Lenora Rural High School Joint District No. 1 of Norton and Graham counties.

The trial court found as a fact that the submitted applications filed with the joint school district board did not include all adjacent land in Graham County not within any rural high school district; that certain land was excluded from such applications when circulated so that certain electors opposed to the attachment of territory would not be counted as electors within the adjacent area ordered attached; that defendants had no right to include only a part of such adjacent land and exclude another part of the land; and for that reason the county superintendent of Norton County acted arbitrarily and capriciously in approving such applications. The trial court further found that the order of attachment was made without notice as required by G. S. 1935, 72-213 and 72-214.

The court concluded as a matter of law:

"1. Section 3 of Chapter 375 of the 1949 Session Laws [G. S. 1949, 72-3514] does not provide the procedure to be followed in attaching an area not in any rural high school district to an existing joint rural high school district.

"2. The altering of the boundaries of an existing joint rural high school district by attaching an area not in any high school district takes the joint approval, consent, and action of the County Superintendents of the Counties in which the school district lies as is provided for by G. S. 1935, 72-303, 72-304 and 72-305.

"3. In a procedure to attach territory not in any high school district to an existing joint rural high school, the manner of giving notice is prescribed by G. S. 1935, 72-213, 72-214, and failure to give notice as prescribed by said Statutes renders the proceeding null, void and of no effect.

"4. The procedure for attaching territory not in any high school district to an existing joint rural high school requires a hearing before the County Superintendents of the Counties in which the joint district is located.

"5. In an action involving the validity of the orders of a County Superin-

tendent in attaching an area not in any high school district to an existing joint rural high school district, a Court of equity may refuse to give cognizance to the acts of the said Superintendent where the said acts, as they were in this case, are so arbitrary and capricious and in bad faith as to be tantamount to fraud.

"6. The school laws of this State do not authorize a County Superintendent to alter the boundaries of a joint rural high school district by attaching a part of an adjacent territory not in any school district and leaving out isolated tracts here and there throughout its extent."

On March 15, 1951, the court entered judgment in favor of plaintiffs in accordance with his findings of fact and conclusions of law. Defendants appeal from the judgment of the trial court and first contend that section 3, chapter 375, laws 1949 (G. S. 1949, 72-3514) provides the procedure to be followed in attaching territory not in any rural high school district to an existing joint rural high school district and that it is necessary to secure only the consent of the county superintendent in whose county the main building lies regardless of the location of the territory to be attached. Plaintiffs contend it is necessary to obtain also the consent of the county superintendent of the county in which the territory to be attached is located.

At the outset it may be stated that G. S. 1935, 72-3514 was amended by ch. 375, L. 1949, and as amended is now G. S. 1949, 72-3514 which reads as follows:

"Territory outside the limits of any rural high-school district, but adjacent thereto, may be attached to such high-school district for high school purposes, upon application being made to the rural high-school board by a majority of the electors of such adjacent territory, and upon the approval of said rural high-school board and the consent of the county superintendent of public instruction *in whose county the main building lies:* (*Provided,* That an appeal may be taken from the decision of the county superintendent to the state superintendent of public instruction whose decision will be final. A notice of such appeal shall be served upon the county superintendent within twenty days after the consent is formally given or refused, which notice shall be in writing, a copy of which shall be filed with the state superintendent within fifteen days after such service upon the county superintendent.) The county superintendent shall make a record of such attachment of territory and shall publish a notice of the same, and thereafter such attached territory shall be and compose a part of such rural high-school district for such rural high-school purposes only, and the taxable property of such adjacent territory shall be subject to taxation and shall bear its full proportion of all expenses incurred in maintaining said rural high school."

We have italicized that part added by the 1949 amendment. The following language in the provision for appeal contained in the 1935 statute was deleted by the 1949 amendment: [appeal may be

taken from the decision of the county superintendent to] "the board of county commissioners, if such property proposed to be attached is within one county, and".

The mentioned statute prior to the amendment has been before this court on numerous occasions involving the formation of rural high school joint districts: (1) for forming a rural high school joint district by attaching land in one county to an existing high school district in another county; (2) for attaching territory to an existing rural high school joint district; and we have held the mentioned statute applicable to all rural high school districts and that where land was being added to a rural high school district regardless of its location, only the consent of the county superintendent of the county in which the school building was located was necessary. On the other hand, where land was being added to an existing rural high school joint district, the consent of the county superintendents of both counties involved was required. For a complete analysis of the statute and our decisions, see *Lenora Rural High School v. McGuire*, 161 Kan. 716, 171 P. 2d 291; *Rural High School Joint Dist. v. Pope*, 168 Kan. 45, 210 P. 2d 587. We feel that no further discussion of our authorities is necessary.

The statute having been so interpreted by this court on several occasions, it appears the legislature clearly intended in the mentioned statute to supplement existing legislation on the subject. It must be assumed that the legislature intended to supply some want, to fill some deficiency, to add something to make the existing legislation more complete. It will not be imputed to the legislature that it intended to go through the form, time and expense of legislating to accomplish nothing or to do that already fully and completely done. In determining the intent of the legislature, the court is not limited to a mere consideration of the words employed but should look to the existing conditions, the causes which impelled the enactment, and to the object sought to be obtained. (*Brown v. Illinois Bankers Life Assur. Co.*, 144 Kan. 670, 674-5, 63 P. 2d 165). The legislature, as disclosed by the italicized portion of the quoted statute, could have had but one thing in mind and that was to include in said section all the rural high school districts including rural high school joint districts, in order that the same attachment procedure would apply. The addition of the words "in whose county the main building lies" signifies more than one county and contemplates a joint district.

It is our conclusion that the statute as amended is complete

in and of itself and prescribes the procedure to be followed in attaching an area not in any high school district to an existing joint rural high school district and in so doing it is necessary to secure only the consent of the county superintendent of public instruction in whose county the main building lies, and that G. S. 1949, 72-303, 72-304, and 72-305 have no application to the formation of rural high school joint districts or adding territory thereto.

Plaintiffs next contend that the proceedings were void by reason of the failure of the county superintendent of Norton County to give notice and hold a hearing as prescribed by G. S. 1949, 72-213 and 72-214, before giving her consent to the attachment of territory. Defendants contend that G. S. 1949, 72-3514 is a specific act complete within itself, and is not subject to the provisions of sections 72-213 and 72-214 relating to notice in the formation and alteration of boundaries of common school districts lying wholly within the boundaries of a single county. An examination of the statute and the proceedings had in the instant case to attach the territory in question to the rural high school joint district discloses that the proceedings were in accord with the statute in all respects. The territory in question was adjacent to a rural high school joint district; it was not within the territory of any rural high school district; a majority of the electors resident in the territory petitioned to be annexed to the joint district; the petition for annexation was presented to the proper board and to the county superintendent of Norton County and received favorable action. Appeal was taken to the state superintendent of public instruction where said proceedings and attachment were affirmed and notice given, all as contemplated by the statute in question. When such proceedings were initiated by a majority of the electors, only approval by the school board of the joint district and consent of the county superintendent of Norton County was required. Notice and hearing is not contemplated by the statute as amended. G. S. 1949, 72-213 and 72-214 have no application to the proceedings in the instant case.

Plaintiffs next contend that the county superintendent of Norton County arbitrarily and capriciously consented to the attachment application when said application included only a part of the adjacent territory not within any rural high school district and excluded other such adjacent territory. We are unable to follow plaintiffs' contention. The statute reads that the application for attachment of territory shall be made to the rural high school board

by a majority of the electors of such territory with the approval of the high school board and consent of the county superintendent. The county superintendent had nothing to do with circulation of the application or with the electors to be included therein. The legislature left this matter up to the electors. The electors determined what land was to be included in their application and the county superintendent of Norton County had no authority to change the application. Her duty as prescribed by the legislature was to approve or disapprove the application; she could neither add to nor subtract from the land included in the application. Plaintiffs did not argue, nor did the court find, that the electors acted arbitrarily or capriciously.

The statute provides that an appeal may be taken from the decision of the county superintendent to the state superintendent of public instruction, *whose decision will be final.* An appeal was taken in this case from the action of the board and the county superintendent to the state superintendent of public instruction, and the proceedings and attachment were affirmed. To hold that the question of the advisability of consenting or withholding consent to the annexation of certain territory to a joint rural high school district could be tried out in the courts after the state superintendent had passed upon it would be to render meaningless the language of the statute "whose decision will be final." There is a reason why that should be the case. The state superintendent is better equipped to ascertain what is good for a particular school district than a court would be. (*State, ex rel., v. Brooks,* 160 Kan. 526, 531-2, 163 P. 2d 414.)

Inasmuch as the duty of the county superintendent of Norton County did not extend to the exclusion or inclusion of property set forth in the application for attachment, and her duty was only to approve or disapprove the application as submitted, she cannot be held to have acted arbitrarily or capriciously. Moreover, the decision of the state superintendent of public instruction in approving such annexation was final and conclusive.

Plaintiffs finally contend that the electors of territory not within any rural high school district but adjacent to a rural high school joint district cannot petition to have land brought into such district without including in their application all the adjacent land which is outside any high school district. We can find nothing in the statute to sustain this contention by plaintiffs. The statute does not use the word "all"; it says "territory outside the limits of

any rural high school district but adjacent thereto may be attached . . ." The only requirement fixed is that the property sought to be attached be adjacent, without reference to any maximum or minimum territory within the area, and that it may be attached if a majority of the electors in said adjacent area sign the application for such attachment.

In view of what has been said, the judgment of the lower court is reversed and the cause remanded and the lower court is instructed to issue an order directing the county superintendents of Graham and Norton Counties to make the proper records for completion of the attachment proceedings.

WEDELL, J., dissents.

PARKER, J., not participating.